**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **RICARDO WRIGHT, BERYL JACKSON, TRACEY MARTIN, CALVIN FLUKER, LISA PITCHFORD, KIMBERLY LOVE,** ) ) ) ) ) | |
| ) | **CIVIL ACTION NO.: 2:06cv785-MHT** |
| **PLAINTIFFS,** ) ) | |
| ) | **JURY DEMAND** |
| V. ) ) | |
| **U.S. FOODSERVICE, INC. and U.S. FOODSERVICE, INC. - MONTGOMERY DIVISION,** ) ) ) ) | |
| **Defendants.** ) ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO SEVER**

COME NOW, the plaintiffs and submit their response in opposition to Defendant's Motion to Sever. For the reasons set forth below, plaintiffs assert the defendant's motion is due to be denied and plaintiffs request the entry of an Order denying Defendant's motion in all respects based on the following:

**I.    Standard of Review**

The defendant contends in its motion that even before any discovery is conducted in the case that plaintiff's claims should be severed pursuant to Fed. R.

Civ. P. 21.  A district court has broad discretion in ruling on a motion to sever. *See, Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1322 (11th Cir. 2000)("We review a district court's joinder of Plaintiffs' claims and denial of severance for abuse of discretion."), *citing, Nor-Tex Agencies, Inc. v. Jones,* 482 F.2d 1093, 1100 (5th Cir.1973)[1].

## II.   Legal Argument

In order to obtain a severance, the defendant must demonstrate that plaintiffs' claims are misjoined. *See,* Fed. R. Civ. P. 21.  In the instant case, contrary to the assertions of the defendant, plaintiffs' claims are properly joined in accordance with Rule 20(a) of the Federal Rules of Civil Procedure.  Federal Rule of Civil Procedure 20(a) allows persons to join in one action as plaintiffs (a) if they assert any right to relief arising out of the same transaction or occurrence, or series of transactions or occurrences, and (2)  if some question of law or fact common to all these persons will arise in the action.  *See,  Alexander v. Fulton County,* 207 F.3d 1303, 1332-1323 (11th Cir. 2000).  The central theory behind Rule 20 is "to promote trial convenience and expedite the resolution of disputes, thereby eliminating unnecessary lawsuits." *Id.* at 1323.  The United States

---

[1] The Eleventh Circuit has adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981).

Supreme Court has instructed district courts to utilize a liberal standard towards permissive joinder of claims and parties and has stated that "joinder of claims, parties, and remedies is strongly encouraged." *Id*. (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 1137, 16 L.Ed.2d 218 (1966).

For guidance in applying the first prong, courts have looked to cases interpreting the rule governing compulsory counterclaims which also contains a "transaction or occurrence" requirement. *Mosley v. General Motors Corp.,* 497 F.2d 1330, 1333 (8th Cir.1974). Accordingly, all events that are "logically related" to one another, which give rise to a cause of action, may be joined in the same suit. In *Alexander,* the Eleventh Circuit discussed the law set forth in *Mosely* as follows:

> . . . In *Mosley,* perhaps the leading case on the joinder of Title VII plaintiffs under Rule 20, *see* 4 Lex K. Larson, *Employment Discrimination,* §§ 78.05, at 28-29 (2d ed.1994), ten black plaintiffs alleged that General Motors had a general policy of discrimination against black employees. The trial court had ordered the severance of the claims, concluding that the allegations presented a variety of issues and had little relationship to one another. *Mosley,* 497 F.2d at 1332. The Eighth Circuit reversed the trial court's order to sever plaintiffs' claims, concluding that, based on its reading of Rule 20, the General Motors policy ""purportedly designed to discriminate against blacks in employment ... [arose] out of the same series of transactions and occurrences."" *Id.* at 1334. The court held that ""[s]ince a ''state-wide system designed to enforce the registration laws in a way that would inevitably deprive colored people of the right

3

>to vote'' was determined to arise out of the same series of transactions or occurrences, we conclude that a company-wide policy purportedly designed to discriminate against blacks in employment . . . [arose] out of the same series of transactions or occurrences"" *Id.* at 1333-34 (quoting *United States v. Mississippi,* 380 U.S. 128, 142, 85 S.Ct. 808, 815-16, 13 L.Ed.2d 717 (1965)). *See also Blesedell v. Mobil Oil Co.,* 708 F.Supp. 1408, 1422 (S.D.N.Y.1989) ( ""A company-wide policy purportedly designed to discriminate against females in employment arises out of the same series of transactions or occurrences.""); *1324 *King v. Pepsi Cola Metro. Bottling Co.,* 86 F.R.D. 4, 6 (E.D.Pa.1979) (noting that allegations of a ""pervasive policy of discrimination"" by the employer bring the ""complaints of individual Plaintiffs under the rubric of the ''same series of transactions' ""); *Vulcan Soc'y of Westchester Cty. v. City of White Plains Fire Department,* 82 F.R.D. 379, 387 (S.D.N.Y.1979) (stating that transaction requirement met where Plaintiffs and would-be Plaintiffs claimed discriminatory policies and practices which included a series of exams allegedly used to discriminate against blacks).

*Alexander*, 207 F.3d at 1323.

The second prong of the Rule 20(a) test does not require that all of the questions of law and fact arising in the lawsuit be common. The requirement is that only **some** question of law or fact be common to all of the parties. *Alexander,* 207 F.3d at 1324. The *Alexander* court held that the discriminatory character of the defendant's conduct was "plainly common to each plaintiff's recovery." *Id.* The court further held that "the fact that the plaintiff's suffered different effects -

in this case, discrimination in promotions, transfers, assignments, or discipline - from the alleged policy of discrimination did not preclude the trial court from finding a common question of law and fact." *Id.; See also, Mosely* 497 F.2d at 1334; *Blesedell v. Mobil Oil Co.,* 708 F.Supp. 1408, 1422 (S.D.N.Y. 1989).

In the instant case, the plaintiffs, who are all African-American, have presented claims that are logically related to each other. They all contend that they have been discriminated based on a division-wide policy of denying African-American employees the opportunity for advancement to managerial positions that have been available within the same approximate time frame. All of the plaintiffs filed EEOC charges within approximately one year of each other, and they all work out of the same division office in Montgomery. All of the plaintiff have been denied promotions, in part, as the result of the defendant's failure to post positions which has lead to the hand-picking of less qualified white candidates. While only plaintiff Calvin Fluker has a hostile environment claim, the majority, if not all, of the plaintiffs have been negatively effected by decisions made by the same upper management employees involved in Fluker's hostile environment claim, including, but not limited to, Vice President of Sales, Joe Chambliss, and Director of Human Resources, Ben McDavid. Moreover, the EEOC investigated all of the plaintiffs' charges together and issued a determination that the defendant

has subjected to African-American employees as a class to a racially hostile environment and to retaliation as a class. In the Amended Determination, the District Director of the EEOC stated as follows:

> The record of testimony shows that a company culture exists in which racists comments, racial tension and retaliation is tolerated by and participated in by management employees. Throughout the investigation, there has been significant testimony of differential terms and conditions of employment for Black employees. . . . Witness testimony also indicated that when Black employees used the 1-800 number to complain of the racially hostile environment and discrimination, the calls were re-routed to Ben McDavid, V.P. of Human Resources, who employees indicate thereafter engages in intimidation and retaliatory behavior against complainants.
>
> The investigation revealed that Respondent has a publicized policy against harassment. Despite the published policy, testimonial evidence supports that Charging Party and a class of Blacks are subjected to a hostile work environment; that Black employees are treated differentially; that complaints are made, but no effective corrective action is taken; and the hostile environment continues to exist. . . . Further, complaints while allegedly investigated are not taken seriously. Charging Party Fluker was once told by the Division President in response to a complaint that he was "too sensitive."
> Based on the evidence of record and an analysis of same, I have determined that there is a reasonable cause to believe that Respondent discriminated against Charging Party and a class of Black employees by subjecting them to a racially hostile and offensive work environment and establishes violations of Title VII of the Civil Rights Act of 1964, as amended.
>
> I have further determined that there is a reasonable cause to believe that Charging Party and a class of Black employees were subjected to retaliatory harassment for their complaints in violation of Section 704(a and b) of the Civil Rights Act of 1964, as amended.

In its motion, the defendant argues that because different supervisors discriminated against the plaintiffs, their claims do not arise out of the same transaction or series of transactions. However, through discovery the plaintiffs will prove that most of the discriminatory decisions affecting promotions, compensation, and the other terms and conditions of their employment at issue in the case occurred as the result of a division-wide policy implemented and enforced by a small number of white upper management employees. In addition, the fact that different supervisors who work in the division office in Montgomery were discriminating against African-American employees supports plaintiffs' contention that the defendant possesses a division-wide policy of discrimination, as opposed to discrimination by an isolated supervisor whose actions may or may not reflect company policy. Such a division-wide policy of discrimination suggests a "logical relationship" between the plaintiffs' claims. *See, Mosely,* 497 F.3d at 1333. *See also Blesedell v. Mobil Oil Co.,* 708 F.Supp. 1408, 1422 (S.D.N.Y.1989) ( "A company-wide policy purportedly designed to discriminate against females in employment arises out of the same series of transactions or occurrences."); *King v. Pepsi Cola Metro. Bottling Co.,* 86 F.R.D. 4, 6 (E.D.Pa.1979) (noting that allegations of a "pervasive policy of discrimination" by the employer bring the "complaints of individual Plaintiffs under the rubric of the

'same series of transactions'"); *Vulcan Soc'y of Westchester Cty. v. City of White Plains Fire Department,* 82 F.R.D. 379, 387 (S.D.N.Y.1979) (stating that transaction requirement met where Plaintiffs and would-be Plaintiffs claimed discriminatory policies and practices which included a series of exams allegedly used to discriminate against blacks).

The defendant only points to dissimilarities between each of the plaintiffs' claims in support of its motion; however, the law does not require that all issues of law and fact being similar but only some issues be similar. *See, Alexander*, 207 F.3d at 1324. The majority of the claims center on the core allegations that the division discriminates against African-American employees in promotions and compensation based on their race and that all of the plaintiffs were retaliated against for filing EEOC charges. There is substantial overlap between these claims of the plaintiffs. For example, five of the plaintiffs have been denied promotions to either territory manager or district manager positions in the same sales department supervised by Joe Chambliss. In fact, several of the plaintiffs allege that they were denied the same promotions. Moreover, all of the plaintiffs who hold the positions of territory managers have alleged that they have been discriminated against by the defendant in compensation in the same manner, including by receiving less lucrative accounts and support, fewer discounts and

less desirable credit terms, and poor customer service.  Further, plaintiffs will prove, as alleged, that the defendants conducted a coordinated campaign of retaliation against them for opposing discrimination.  Thus, it is abundantly clear that the plaintiffs claims' share some common questions of law and fact as required by Fed. R. Civ. P. 20.  See, *Wilson v. Fleetwing Corp.,* 2006 WL 2228930 (M.D. Fla.), *citing, Alexander,* 207 F.3d at 1324. *See also, Cooper v. Federal Reserve Bank of Richmond,* 467 U.S. 867, 876, 104 S.Ct. 2794, 2799, 81 L.Ed.2d 718 (1984) (explaining that evidence of pervasive discrimination against others is admissible if such evidence is similar to the complainant's experience and tends to establish that "racial discrimination was the company's standard operating procedure-the regular rather than the unusual practice") (quoting *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 336, 97 S.Ct. 1843, 1855, 52 L.Ed.2d 396 (1977).

Despite defendant's argument to the contrary, this case does not involve many decisionmakers and a myriad of unrelated claims.[2]  Plaintiffs will prove that

---

[2] *Grayson v. K-Mart Corporation,* 849 F.Supp. 785 (N.D. Ga. 1994), cited prominently by the defendant, is factually distinguishable.  In *Grayson*, the plaintiffs, a group of eleven store managers over 40 years old, contended that K-Mart had a general bias toward older store managers. *Grayson,* 849 F.Supp. at 786.  However, each of the eleven plaintiffs worked in a different store that were spread across Alabama, Florida, Georgia, and North Carolina. *Id.* at 786.  In addition, each of the plaintiffs at the time of their terminations reported to

most of the selection decisions at issue in this case were made by upper management employees in the Montgomery corporate office, specifically Joe Chambliss and Ben McDavid and that these same decisionmakers have been involved in retaliating against the plaintiffs as a group.  It is in the interest of judicial economy and the convenience of the parties that the cases should be maintained in a single action before a single judge.  This will permit discovery to be coordinated, minimize or eliminate duplicative discovery, hearings and motions, allow coordination of deadlines and otherwise foster judicial economy.  The discovery in the cases will focus on many of the same documents and it would be illogical to conduct six sets of depositions, six sets of hearings and six trials.  The costs of six trials with most of the same witnesses will be an unnecessary waste of judicial resources and the resources of the parties, especially under the circumstances of the instant case.

### III.   CONCLUSION

Based on the foregoing, defendant's Motion to Sever is due to be denied.

Respectfully submitted,

---

different district managers and regional managers. *Id.* at 787,  Moreover, the employment decisions at issue were made based, at least in part, on the individual economic performance of each plaintiff/manager's store. *Id.* at 788-789.

            s/Maury S. Weiner
            Jon C. Goldfarb (ASB-5401-F58J)
            Maury S. Weiner (ASB-8856-W86M)

            Counsel for Plaintiff

**OF COUNSEL:**
Wiggins, Childs, Quinn & Pantazis, LLC
301 19th Street North
Birmingham, AL 35203
Telephone No.: (205) 314-0500
Facsimile No.: (205) 254-1500


## CERTIFICATE OF SERVICE

 I hereby certify that I have filed a true and correct copy of the above and foregoing document the Clerk of Court using the CM/ECF system which will electronically notify the following counsel of record:

Tammy L. Baker, Esq.
Tamula R. Yelling, Esq
CONSTANGY, BROOKS & SMITH LLC
One Federal Place, Suite 900
1819 Fifth Avenue North
Birmingham, Alabama 35203

on this the  17th  day of  October , 2006.


             s/Maury S. Weiner
            OF COUNSEL